UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.
                                Criminal No.: 11-20504
                                Honorable Victoria A. Roberts

JOHN OLATOKUNBO SONAIKE, D-1,

      Defendant

_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
## AND REQUEST FOR *FRANKS* HEARING

## I. INTRODUCTION

This matter is before the Court on Defendant John Sonaike's Motion to Suppress and Request for an Evidentiary Or *Franks* Hearing. Sonaike is charged in two counts of a four-count indictment: Count One for conspiracy to distribute 100 grams or more of heroin, and Count Three for possession with intent to distribute 100 grams or more of heroin. Count Three was dismissed by stipulation. The Court heard oral argument on April 15, 2013.

Sonaike asks the Court to suppress all evidence obtained pursuant to two search warrants; one issued on December 10, 2010 and another on February 3, 2011. Sonaike claims that the affidavits in support of the warrants fail to allege sufficient facts to support a probable cause determination. Sonaike also requests a hearing to challenge the affidavits pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978).

Sonaike's Motion to Suppress and Request for *Franks* Hearing is **DENIED**. The Court finds that the good faith exception applies to the search warrants and precludes suppression of the evidence obtained. The Court also finds that the alleged omissions in the affidavits did not show an intention to mislead the magistrate.

## II. BACKGROUND AND PROCEDURAL HISTORY

On December 10, 2010, Roseville Michigan Police Officer Sergeant Mitchell J. Berlin submitted an affidavit and obtained a search warrant from Judge Melissa King Shannon of the 39th District Court for the City of Roseville. The affidavit stated that officers of the Drug Enforcement Administration ("DEA"), through their narcotics investigation, learned of a group of individuals importing narcotics into the United States; the affidavit also identified Sonaike as the owner of cell phone number 313*805*2911, and that Sonaike was a mid-level narcotics trafficker. Judge Shannon issued a search warrant ordering cell phone companies to provide the contents of wire and electronic communications in electronic storage, global positioning data, location data, and cell site information for the 313*805*2911 phone number.

On February 3, 2011, Berlin obtained a second search warrant for the same phone number from the same Judge, requesting a 60-day extension.

On August 11, 2011, Sonaike was criminally charged.

## III. APPLICABLE LAW AND ANALYSIS

## A. The Affidavits Were Too Conclusory To Establish Probable Cause

Sonaike argues that the affidavits supporting the search warrants do not contain particularized facts for a probable cause determination. Sonaike argues that the affidavits were devoid of information identifying the targeted group or the type of drugs

2

involved. He maintains that no other information in the warrant could possibly relate to

probable cause. He also argues that the deficient search warrants do not qualify under

the good-faith exception articulated in *United States v. Leon,* 468 U.S. 897 (1984)

because the Judge abandoned her judicial role, and that any judicial belief in the

existence of probable cause was totally unreasonable. Therefore, all evidence seized as

a direct or derivative result of these deficient warrants should be suppressed.

Berlin's December 10th affidavit contains eight paragraphs to establish probable

cause:

> "1) Affiant is a police officer with the city of Roseville and has been
> so employed for approximately 16 years. Affiant is currently
> assigned to the United States Drug Enforcement Administration as
> a task force agent, which is responsible for investigating covert and
> overt narcotic complaints. The Affiant further works in conjunction
> with other federal and local police agencies investigating illegal
> trafficking of controlled substances throughout the United States of
> America. Affiant has over five years of undercover narcotic
> experience. Affiant has attended numerous in-service training
> seminars totaling over 1,200 hours of training in narcotic complaints
> and has participated in the obtaining and execution of over 700
> search warrants. Affiant has also been involved in the arrest of over
> 1,500 individuals for narcotic related crimes.
>
> 2) During the month of September, 2010 Agents/Officers of the
> Drug Enforcement Administration's Detroit Field Division Group 9
> (DFD Group 9) obtained information that potentially an unknown
> group of subjects were/are involved in the trafficking of large
> quantities of narcotics in the tri-county Detroit metropolitan area.
> Your Affiant believes that the unidentified drug trafficking
> organization is importing the narcotics from several different source
> [sic] of supplies operating outside of the United States of America.
> Based on the information a narcotics investigation targeting these
> subject(s) was initiated.
>
> 3) During the course of this investigation Agents/Officers along with
> your Affiant identified a Sprint/Nextel cellular telephone number
> #313-805-2911, that is being used by a subject identified as John
> Ola Sonaike, a male subject with a date of birth of January 14,

1973, at this time to facilitate the importation and sale of narcotics in the tri-county greater Detroit metropolitan area [sic].

4) Your Affiant knows based on a toll analysis of the targeted cellular telephone 313-805-2911 that John Sonaike has/is been in contact with several narcotic traffickers identified through Drug Enforcement Administration databases that are specifically linked to the importation of large quantities of heroin to the tri-county greater metropolitan Detroit area.

5) Your Affiant believes that the John Sonaike, the user of Sprint/Nextel telephone number 313-805-2911 is a mid-level narcotic trafficker and is personally involved in the importation of heroin from the state of New York to the tri-county greater Detroit metropolitan area. [sic] Where they are then distributed by several known and unknown drug trafficking organizations.

6) Agents/Officers have conducted traditional methods of moving surveillance on John Sonaike and some of [sic] narcotic trafficking associates but have been hampered due to the counter-surveillance techniques employed by John Sonaike and his associates.

7) Based on the information collected during the on-going investigation into this drug trafficking organization. [sic] it is your Affiant's firm belief that the obtaining of the requested information/data from the cellular telephone number 313-805-2911, that your Affiant knows is being used to facilitate narcotic trafficking would allow investigators to track the user of this cellular telephone and assist in identifying additional suspects that are involved in the trrafficking [sic] of narcotics. Further being able to track the whereabouts of the user of cellular telephone 313-805-2911, will allow investigators to identify drug traffickers and enhance law enforcements efforts to continue their efforts into dismantling this drug trafficking organization.

8) Affiant requests that this order/warrant be authorized for a period of 60 days to allow Affiant and Affiants [sic] associates proper time to monitor the user of Sprint/Nextel cellular telephone 313-805-2911. The 60 days allows Agents proper time to track and travel, if needed the user of Sprint/Nextel number #313-805-2911." (Doc. 99-2, Pg ID 285-286).

Sonaike cites only the second paragraph in arguing that the affidavits were insufficient for a probable cause determination. Further, Sonaike points out that the December 10th affidavit and the February 3rd affidavit are identical. This is not true. The February 3rd affidavit contains one new paragraph:

> "Your Affiant knows based on information obtained from a federally court ordered Title III investigation, that within the last 48 hours John Sonaike has utilized Sprint/Nextel telephone number #313-805-2911 to facilitate the potential importation of heroin into the tri-county greater Detroit metropolitan area." (Doc. 99-3, Pg ID 289).

The Government argues that Berlin's affidavits did provide sufficient information for a probable cause determination. It says that probable cause is a practical, nontechnical conception based on common-sense conclusions about human behavior. The Government points out that Sonaike's limited focus on the second paragraph in Berlin's December 10th affidavit is not a view of the totality of the circumstances. The Government also argues that even if the affidavits lack probable cause, the good faith exception applies and the Court should not suppress any evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated.

Probable cause requires that the issuing magistrate make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her]…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1978). The information presented in an affidavit must be sufficient to allow an official to independently determine probable cause; "his action cannot be a mere ratification of the bare conclusions of others." *Id.* at

5

239. A warrant must be upheld as long as the "magistrate had a substantial basis for…concluding that a search would uncover evidence of wrongdoing…" *Id.* at 236.

Conclusory statements provide virtually no basis at all for making a judgment regarding probable cause. *Id.* at 239. The Sixth Circuit defines a conclusory affidavit as one which states "only the affiant's belief that probable cause existed." *United States v. Finch,* 988 F.2d 349, 352 (6th Cir. 1993) (quoting *United States v. Ciammitti*, 720 F.2d 927, 932 (6th Cir.1983)). Berlin's affidavits contain statements of this nature.

In paragraph two, Berlin says that DEA agents obtained information that an unknown group of subjects is involved in trafficking narcotics in the Detroit area. He does not state how the DEA came to know this information, only that he "believes" that the unidentified drug trafficking organization is importing narcotics.

In paragraph four, Berlin says that based on a toll analysis, he knows Sonaike was in contact with narcotic traffickers. This information alone is not enough to establish a nexus between Sonaike's phone number and illegal activity; without details as to the nature of this contact, it is premature to conclude that Sonaike himself was a trafficker based only on his contact with known traffickers.

In paragraph five, Berlin again says that he "believes" Sonaike is a mid-level narcotics trafficker and is personally involved in the importation of heroin into Detroit. This statement is a mere conclusion, and does not provide any information as to how Berlin knows about Sonaike's level of involvement.

In paragraph six, Berlin says that he and other agents tried traditional surveillance techniques on Sonaike but were hampered due to Sonaike's counter-surveillance methods. A suspect's use of counter-surveillance methods may give weight

6

to the existence of probable cause, yet Berlin provides no details as to what the DEA agents specifically did, what their surveillance revealed, or what Sonaike's counter-surveillance activities were.

Although the February 3rd affidavit contains slightly more information than the December 10th affidavit, the added information is still conclusory because it does not provide any details as to how the Title III investigation revealed Sonaike's facilitation of heroin trafficking.

The existence of probable cause is an extremely close call. However, the Court concludes that the good faith exception clearly applies, and will, therefore, assume without deciding that probable cause did not exist.

## B. The Good Faith Exception Applies

The Sixth Circuit explained that "[c]ourts should not…suppress evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Carpenter,* 360 F.3d 591, 595 (6th Cir. 2004) (citing *Leon,* 468 U.S. at 922 (1984)). Under *Leon,* the good-faith exception will not apply in four specific situations: (1) where the affidavit contains information the affiant knows or should have known to be false; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit; (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon,* 468 U.S. at 923.

Sonaike argues that the second and third situations existed. The Court disagrees.

First, there is no showing that Judge Shannon wholly abandoned her judicial role. When delineating the situations in which the good faith exception did not apply, the Supreme Court in *Leon* cited *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979) as an example of a judge who wholly abandoned his judicial role. In *Lo-Ji,* the warrant for defendant's adult bookstore was deemed invalid because the issuing judge participated in the search and seizure of the bookstore. There are simply no comparable facts here.

The third situation does not apply either. The Sixth Circuit established that the "so lacking in indicia" test established in *Leon* is less demanding than the showing needed to establish probable cause, which is the "substantial basis" test set forth in *Gates. Carpenter,* 360 F.3d at 595 (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir.2002)). Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good faith reliance. *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). Affidavits that are "so lacking in indicia of probable cause" only contain "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]" *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.2005).

The Court finds that although the affidavits contain conclusory statements, they are not completely devoid of any connection between Sonaike's phone number and narcotics trafficking; Berlin states that there was enough of a connection between Sonaike's phone number and narcotics trafficking that a DEA investigation was initiated; that based on the DEA's on-going investigation, and toll analysis, Sonaike used the

phone number to contact several narcotics traffickers identified through DEA databases. Berlin also indicated that he and other DEA agents tried traditional surveillance methods on Sonaike and were hampered due to counter-surveillance techniques. Berlin outlines his training and experience investigating narcotics trafficking.

## C. No Improper Conduct Exists To Justify A *Franks* Hearing

Sonaike makes a scant argument for a *Franks* hearing. He attached a memorandum to his request, which claims that the questions raised in the memorandum can only be addressed in a *Franks* hearing.

To be entitled to a *Franks* hearing, a defendant must make a substantial preliminary showing that the affiant's statements were deliberately false or demonstrated a reckless disregard for the truth. *Franks,* 438 U.S. at 155-56. Sonaike's memorandum does not articulate any allegedly false material; rather, it merely repeats his arguments that the affidavits lack facts. He says that due to the lack of facts, Berlin "purely misled the magistrate," which entitles him to a *Franks* hearing.

The Sixth Circuit holds that except in the very "rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis in original). *See also United States v. Khami,* 362 Fed.Appx. 501 (6th Cir. 2010); *Hale v. Kart*, 396 F.3d 721 (6th Cir. 2005). The Court finds that Sonaike has not made a strong preliminary showing that he is entitled to a hearing; nor does he prove that any omissions were made with the intent to mislead.

9

**IV. CONCLUSION**

Regardless of whether probable cause existed, the good faith exception applies

to the search warrants for phone number 313*805*2911. The Court also finds no

intention to mislead the Magistrate Judge which would necessitate a *Franks* hearing.

Sonaike's Motion to Suppress and Request for a *Franks* Hearing is **DENIED**.


 /S/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 18, 2013

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
April 18, 2013.

S/Linda Vertriest
Deputy Clerk